May it please the court, counsel, my name is Chris Stewart and I represent Charles McManemy with regards to this 1983 action and appeal. We are here on appeal with regards to a grant of summary judgment at the district court level on the defendant's motion for qualified immunity. However, in viewing this case in the light most favorable to Mr. McManemy, we believe that Bruce Tierney and Kirk Dollis-Lager's use of force against McManemy was excessive. Further, because of the actions of Tierney and Dollis-Lager, McManemy's failure to intervene claims also survived. After arguments on this matter, we will respectfully request that this court reverse the district court's ruling on summary judgment and remand this case for further proceedings. Overall, we believe the facts important to this case are in dispute and a jury question still remains on the counts dismissed by the district court. With that in mind, we agree with the district court's holding that the car chase in this case is relatively clear, but the ultimate arrest and force used on McManemy is in dispute. As the district court noted, the two dash cam videos submitted with the motion for summary judgment do not clearly support either version of the party's events. They do rule out some things though, don't they? They do rule out sort of kicking by Tierney. Don't you think that's a fair viewing of the video? I would agree with that, Your Honor. Yes, they do rule that out. What else do they rule out? I really think that's it. They also rule out also that Mr. McManemy was not tased while he was handcuffed. We obviously disagree with that because we believe there's a fact question in that he was tased after he was handcuffed. That clearly show that your client was resisting. Up until the point, yes. Okay. Proceed. The court went further and said it's impossible to see or hear when or whether McManemy is tased. It is also impossible... Can I ask a question about the tasing? My understanding is that the taser itself showed two tasings and your client had claimed that there were four or five tasings. Do you agree that we can assume, given that record, that there were only two tasings of your client on that day? Correct. I agree with that assumption that there were only two tasings and the two tasings took place 15 seconds apart. Okay. They were in the drive mode, right? Correct. They were. They went further. While some of the officer's commands are clearly audible, it's impossible to determine what McManemy may have been saying. I think most importantly, the district court stated the dash cam videos in this case, while providing a spectacular view of the car chase, provide very little information about the disputed arrest, which is what we're here for today. From the video and the evidence of this case, we know factually what happened, that Dallas Lager utilized his tasers twice, 15 seconds apart. Tierney comes to the arrest. There are six other deputies on scene, four hands on with my client, Mr. McManemy. Tierney stomps on Mr. McManemy's leg. Tierney says he trips. He goes around the right side of Mr. McManemy's body, over to the left side, goes down into the ditch, comes back up, and positions himself right next to McManemy's head. Tierney, as soon as the arrest is over, McManemy complains that he was kneed by someone wearing brown pants. Tierney was the only individual that night wearing brown pants, and McManemy suffered injuries. The remaining facts, we believe, are in dispute. McManemy states he was tased once before he was handcuffed, and then once after he was handcuffed.  McManemy states he was kneed in the face by Tierney multiple times. Tierney denies that he intentionally kneed McManemy in the face, but believes his knee may have come in contact with McManemy's face. We have a fact issue here. Counselor, is there any dispute that Mr. McManemy's head was already being held down by another officer at the time? No, we're not disputing that, nor we call that excessive in this case. I believe what we're getting at in this case is the kneed continually to his face is excessive, and we believe, based upon those facts, the disputed facts of this case, that the Coker v. Arkansas State Police case is directly on point here. As outlined by this court in Coker, when we have two plausible stories, which is what we have here, one from the defendant, and one from the plaintiff, the jury question still remains. In Coker, out of the view of the camera, the parties' stories differed immensely. The officer stated he was- Was the Coker case in your brief? It is. It's in the reply brief right now. The reply brief? Yes. Okay, great. The officer stated he only used force reasonable enough to effectuate the arrest. Coker argued the force was excessive and that he was struck in the face multiple times with a flashlight and kicked. The district court granted immunity to the defendant, stating that the force was reasonable throughout the altercation. This court, on appeal, reversed, leaving it to the jury to decide whose story is more plausible. This is directly what we have here. The district court found the force was reasonable throughout the altercation. However, the court couldn't clearly see the actions of Tierney and Dollas Lager when McManamy is stating that he was injured. As a result, a fact issue remains. The defendants rely heavily on Mann v. Yarnell to argue that McManamy cannot create a jury question by taking issue with the video. This comparison is unfounded, as Mann specifically relied on facts to create allegations that were not founded in the record and the district court specifically had to rely on the officer's accounts and on the video of a third party. The district court here correctly determined that Mann was not an appropriate case to compare to McManamy and found the fact the video does not clearly demonstrate how much force was used and Tierney's intent in using that force means that resolving this issue depends on a credibility judgment. Issues of credibility are not appropriately resolved in the motion for summary judgment. We agree with the district court on that analysis, but we believe the district court called into question Mr. McManamy's credibility in stating that his story was not plausible. Our position is that it is plausible and what he is stating happened could have occurred. With factual disputes in mind, we have comparable cases from this circuit on establishing that the force, if proven by Mr. McManamy, would constitute excessive force. I think the Gill case is almost directly on point here where a knee drop was used in the Gill case as the plaintiff was held down by four officers. But here's my problem with the Gill case is we had a fully compliant arrestee in that particular case. It was undisputed that they were fully compliant and you had much more serious injuries than you have here. So is Gill really a good comparator here? I believe it is a good comparator. Once again, we've got McManamy on the ground with four officers on top of him pinning him. We've got two other officers there, including a canine officer, and then we've got Tierney coming to the party late and going hands-on with McManamy. But here's the problem. We've got a high-speed chase. We've got him, it appears, to be resisting at some point or else there wouldn't have been a taser and we could debate whether they needed two or one taser use there. But that's not fully compliant. And I just wonder whether that just takes it completely outside of the ambit of Gill. I believe it does not. We've outlined in the brief the issues, and I understand it has to be from a reasonable officer's perspective, the issues with McManamy's shoulder and how he couldn't bring the shoulder back because they were cranking on it as what he alleged. And I believe that once it's brought back, once he's handcuffed and Tierney continues to do what he does, I think that takes it out and puts it directly with Gill, is that he was subdued, he's pinned, that's it. And Tierney just continues on doing what he's doing and kneeing McManamy. So I believe it falls directly with that. Kraut v. Gallmer, I believe, is also on point, establishing a knee as an excessive force. We have the same facts here as outlined as Gill and Gallmer. McManamy was pinned on the ground, four officers at the time, two officers on scene, and Tierney comes to the party late and wants to get involved. We believe his actions were excessive. The district court utilized White v. Jackson as a similarly situated case. Once again, we don't take issue with the knee that was placed on McManamy's head. We take issue with Tierney's actions and kneeing McManamy. So I believe that White is not applicable here to this case. All in all, with regards to Tierney's actions, we believe that a jury question still remains and that his force was excessive. In looking at Dallas-Lager, once again, there are multiple cases that go along with the excessive force we're claiming in this case. Pennycock... Well, addressed like a, I believe it's a Cravener. Address the Cravener case. That seems the closest case. I believe in that case, Your Honor, the fact that there was handcuffing used, I think that this case is more like the Stare case that was recently decided by this court. I think that in Stare... Cravener is a 2018 case, not to nitpick with you. Yeah. But it's pretty recent, and that's five second taser bursts, an unarmed subject, arms broken, but he's actively resisting. Boy, that's pretty close. Well, I think we've got the handcuffing in this case. We've got the handcuffing in that. Mr. McManamy takes no issue with the first tasing, because it has to be from a reasonable officer's perspective, and a reasonable officer would say, couldn't pull the arm back, so I believe he's resisting. But when he's handcuffed and then tased, that's the issue. That's the excessive force. So we believe that Pennycock is on point, Blazek is also on point, that taking into the account we've got a subdued individual and the excessive force still continues. And then the Stare case, which was recently decided, I believe in August of 19, with regards to three tasings, and then we've got the first tasing is reasonable, the second tasing is reasonable, or excuse me, the third tasing is reasonable, and then the second tasing is not reasonable. I believe in this case, the second tasing was not reasonable. The district court's utilization of Eller and Carpenter... Tell me, you said the Stare case. Yes. Is that in your brief? It is not, Your Honor. It is not. Okay, you better give us a 28-J, because several of the cases you cited were not in your brief. I can do that, Your Honor. Yeah. And also check your page citations, a couple of them I tried to find here on the bench. The pages didn't match what was in the index. Okay, thank you. Yeah. All in all, we believe a jury request remains in this case as to the credibility of the parties, and it should be for a jury to decide what happened on that night, excuse me, in March 18 of 2015 in rural Iowa. So, I would request that I respectfully reserve the rest of my time. You may, of course. Thank you, Your Honor. Mr. Palmer, right? Yes, Your Honor. May it please the Court, I represent Bruce Tierney and the remaining Butler County defendants. We obviously agree with Judge Strand. Plaintiff has agreed that the kicking issue is moot. So what we're left with is what Judge Strand set forth in his ruling, that we have Mr. Tierney, his knee coming into contact with the plaintiff, and whether that was excessive force or not. It's not a disputed fact, because Judge Strand took that as true as part of his ruling, and then he correctly went through the law and found two points in which this Court can affirm on. Number one, there is no clearly established law that's beyond debate that what Deputy Tierney did in having his knee come into contact with the plaintiff's eye violated a constitutional right. Counsel, is that contact once or contact repeatedly? I think Judge Strand said several times. I think there's no doubt it wasn't 20 or 30 times. In fact, the plaintiff has walked away from that. Even today, the comment is not 20 or 30 times, but it's several times. And Judge Strand did that. And how do we know that, that it was not repeated? Well, I don't think that we do know that, but Judge Strand took that fact most favorable to the plaintiff, Your Honor. Wasn't that a credibility determination made by the District Court in favor of your claim? In terms of between several times to 20 or 30 times? Between repeated contact and incidental contact. I don't think Judge Strand did that, Your Honor. My recollection of his ruling is that he took the facts most favorable to the plaintiff. That's 20 to 30 times, right? I'm sorry. That's 20 to 30 times by his testimony. That is by his testimony, but the video clearly shows that could not have happened. Because Officer Turney's body was in full view except for 10 seconds. And during the remainder of the video, it was clear that Deputy Turney was kneeling. He could not have been kicking him. His knees were not moving. Well, you can't tell. You can't tell if the knees are moving. Can you? Well, I think that you can. The fact that you can't see it, the fact that you can't see the plaintiff's face moving, and the fact that Turney is for the most part remaining still except for those 10 seconds, I think that you can tell that 20 or 30 times did not happen. Yes. And Judge Strand, what he did was that he realized that based upon the video, that the 20 to 30 times, just like the kicking, was pure speculation on behalf of the plaintiff. Based upon Scott v. Harris, did not have to assume that being true. Counsel, it's not speculation that Mr. McManamy had a black eye and an injured eyeball. I'm sorry, Your Honor. It's not speculation that Mr. McManamy had both a black eye and an injured eyeball. That is correct. So the photographs taken either that day or the next day did show some bruising and some swelling of the left eye. It was noticed also six days later that for the most part the bruising had faded and the swelling had faded. And I think that is consistent with what Judge Strand did, in that he took those facts and made it most favorable to the plaintiff in that the deputy attorney's knee did come into contact several times with the plaintiff. And then he correctly applied the law that based upon the plaintiff resisting a high speed chase, based upon him failing to follow commands, that the force that was applied was at worst in that hazy line that he was still going to be protected based upon qualified immunity. Could we turn to the tasing? How do we know whether the taser was, how do we know it was not deployed after McManamy was handcuffed? I'm going to leave most of that to the Grundy County lawyer, Your Honor. But we know that at 3951 was when he was handcuffed and very shortly thereafter at 3952 or 3953 on the video, the deputies disperse. So I think just by the timing of the video, I think that it would not be in dispute as Judge Strand found that he was tased, he was not tased after he was handcuffed. I would like to spend some time as it related to the court's decision not to exercise supplemental jurisdiction. Certainly, I understand the long history of the Eighth Circuit, that it's not an abuse of discretion to exercise supplemental jurisdiction under these facts. I would urge the court to review the Seventh Circuit case that was cited by the Grundy County defendants, which stands for the proposition that when you have another litigation that's borne out of this case, it is an abuse of discretion not to exercise supplemental jurisdiction. Have you, Lord, searched the Seventh Circuit? Do they use words like ours, purely discretionary, broad discretion, unlimited discretion? You know the kind of words that we have. Do they use those kind of words? I don't know, Your Honor. I bet they're too sophisticated to do that. But regardless of that, I think you're in a different ballpark. Well, when you look at the four factors, when you look at fairness, convenience, judicial economy, I really fail to see how those factors militate into not exercising supplemental jurisdiction. Now we have another lawsuit in state court that we have to defend. That's not fair. It's not fair on behalf of the defendants who had to spend their time and resources in this court to do so. It's certainly not convenient because we have to spend more time. It's certainly not a good use of resources, whether it's based upon the parties or based upon the courts. So just from a practical review of it, when you have another litigation, we believe that it's an abuse of discretion for that district court not to exercise supplemental jurisdiction and decide those state law claims, when they can do so in that same ruling, when everything has been briefed, when the discovery has been completed. So for those reasons, we believe the district court ruling should be affirmed, except as it relates to the state law claims, and that be remanded. Thank you. Thank you. Mr. Schrock. May it please the court? David Schrock representing the Grundy County Defendants. There essentially only are two claims really made against the Grundy County Defendants and more specifically Deputy Dulles-Lager. First Deputy Dulles-Lager allegedly applied the taser the second time after the individual had been handcuffed, and also that Dulles-Lager allegedly failed to prevent an assault by Deputy Tierney that's been discussed here a little bit. We've heard about the video. We know that the video conclusively does not support either side's version of events completely. The video shows us some facts. It certainly shows us a very long, high-speed, dynamic car chase. It shows us also that a number of deputies struggled with this individual for I think well more than a minute after he was eventually taken into custody. It shows that he was kicking and flailing his legs for several moments while the deputies were engaged with him. We also now know about the taser that it wasn't used five times as alleged in the petition. We know it wasn't used three times as was stated by Mr. McManamin in his deposition. We know it was used only twice, briefly, and only 15 seconds apart for three seconds each. And in fact, the three seconds is actually less than the normal full five-second cycle for a taser. Do you want to reply to the case that, I don't know whether that was the one in the reply brief or the new one today, do you want to reply to either of those cases? I'm not certain of the case that the counsel referred to. I do agree with the court's comment that the Cravener case is extremely instructive here where an individual, as here, refused to give up his hands, refused to allow himself to be handcuffed. In that case, I believe the taser was used on the individual some five times for the full five-second taser burst, and that was found not to be unreasonable or excessive under the circumstances. Counsel mentioned a few moments ago, referring to one of his cases, that he said that some of the cases demonstrate where the stories between the parties differ immensely. I want to comment on that because here I don't believe that the stories differ quite as immensely on some of the key facts as counsel would suggest. Because some of the key facts here we can determine not from the video, but actually from the admissions of Mr. McManamy himself and his deposition testimony. He acknowledges that officers were instructing him to give up his hands or to give up his arm. He acknowledged, interestingly, that he was still moving while he was being handcuffed, that he was moving around. He acknowledged that he had been arrested before, and it typically only takes a few seconds for handcuffs to be applied, but he agreed here it took several moments or a few minutes for him to be cuffed. But most significantly for our purposes here, Mr. McManamy acknowledged in his deposition testimony that while officers were struggling to cuff him, he didn't give up his left arm. In his testimony, in his description, he said, I had my left arm up against my side, I had my left arm up against my body. And in fact, that's key here because that is entirely consistent with Deputy Doleslager's report and his testimony when Deputy Doleslager said, I instructed him repeatedly to give up the arm, and I only applied the taser when he refused to give up the arm. Counsel, it seems to me that a reasonable officer could think that he was resisting arrest at that point. The question I have is with regard to the second tasing. How do we know that the second tasing did not occur after Mr. McManamy was cuffed? It seems to me that there was a credibility determination made there by the district court in favor of your client, which would be contrary to our case law. I don't believe it was a credibility determination, Judge, and I think to look at that question, we have to look at both taser applications and determine the manner in which they occurred. We know they happened only a few seconds apart, I believe 15 seconds apart. We also know that this is a little bit different from some of the cases cited by counsel where he cited situations where excessive force was found when a taser was used clearly gratuitously, unnecessarily regarding a person who had not only been handcuffed but had also been subdued. And Judge, I think that's really the case here. Is it possible even that as the officers were essentially finalizing getting this second arm, getting this other arm handcuffed, that that's when the taser was applied? So I don't think he was fully subdued. Counsel, that's just the point. We don't know. It's possible. It is possible that it occurred while the officers were completing the handcuffing process, but I think the real key is, had he been fully subdued, was he still potentially a threat? And I know from the, I think from the Carpenter case and the Ehlers case, they say even a passively resisting individual who refuses to give up his hands to be handcuffed, a taser used can still be justified in those circumstances. I think that's what we have. We know that the video can't conclusively show exactly when that taser was applied the second time. So I don't think the judge was making a credibility determination so much as he was looking at all of the circumstances together. The fact that the officers were still struggling, the fact that the gentleman had not given up his hands. I do want to just briefly address the other claim that Deputy Dulles-Lager failed to prevent an assault allegedly by Deputy Tierney. We think here the facts fall far short of establishing that to be the case. First of all, the knee strike by Deputy Tierney occurred, I think this is undisputed, before the individual had been handcuffed, before he had been subdued. But more importantly, it's plaintiff's obligation, or appellant's obligation here to demonstrate that Deputy Dulles-Lager either knew or should have known of improper actions that were occurring or were about to occur by Deputy Tierney. And more importantly, that he had the opportunity and the time to respond to that. But it's clear in this case that while Deputy Tierney was engaged with Mr. Dulles-Lager, so was Deputy Dulles-Lager. Deputy Dulles-Lager was in fact still on the ground, still kneeling beside Deputy, or excuse me, by Mr. McManamy, trying to get him into custody and to cuff him while this was going on. So clearly, Deputy Dulles-Lager neither had the ability to have foresight of what a deputy from another county might be doing. But more importantly, he himself was engaged with the suspect and simply did not have an any improper conduct by that deputy. So here we feel that the circumstances involving two brief taser strikes less than 15 seconds apart regarding an individual who was clearly struggling with officers, who had refused to give up his arms to officers, clearly under the precedent from this and other circuits, we believe that's not excessive. We believe it's justified and reasonable from the perspective of a reasonable officer. Thank you. Thank you. Thank you. Mr. Stewart, rebuttal. Thank you, Your Honor. With regards to the actions of tyranny, we believe they are excessive. 20 to 30 times was the plaintiff's testimony. I've never been kneed in the face while having four to six officers on top of me, so I don't know. What we know for sure is that the video cannot specifically show or does not specifically show the actions of tyranny. I agree with the district court that tyranny is, or at least the lower part of his body is not visible for approximately 41 seconds. I disagree with the apoli's assertion that it was 10 seconds approximately. I believe it's 41 where his body, his lower part of his body is not visible. We've got McManamy stating that he was kneed in the face multiple times by tyranny, and there's nothing on the video to indicate either way what the story is. McManamy's story is plausible. He's got the injury. The injury lasted. The black eye was there. He's got a nodular epistolitis to his eye that is clearly outlined in the medical records and in the appendix, and we believe that there's a jury question on that fact. In looking at the tasing by Dallas Lager, I believe the court correctly outlines this was a credibility determination. Mr. McManamy's story is plausible. He could have been tased twice. Once when he was handcuffed, once when he was not. That 15 second timeline, that 15 second window is not in dispute here, but McManamy's saying he was tased when he was handcuffed. So that comes down to credibility determination, and that's what the district court did. They essentially said- Does the video help at all on the tasing? I can't remember that part of the video. Help me on that. I do not believe it does, especially because we have an issue with the taser log. The taser log timeline or time that's outlined on the taser log is different than the video on the timeline, and it's not just by an hour. It's completely off, so I don't believe it helps at all. The taser log helps to establish that they were 15 seconds apart. That's it. We can't tell on the video either when McManamy is handcuffed, and I disagree with the appellee's certain point on the video because you just cannot tell. The only things you can tell are when officers get off of him and they start high-fiving each other. That's it. You can't tell anything else. And so I believe, going back to one of the appellee's argument on whether or not Mr. McManamy was a threat at that time when he was tased a second time, I don't believe he was. I think once he's handcuffed, and that's done. He gets out of the vehicle. That shows it on the video. He gets out of the vehicle, lays on the ground, face down, ready to be handcuffed. Reasonable officer, obviously, pulling back the arm. Once he's handcuffed, though, that's it. Dulles Lager tased him again, at least by Mr. McManamy's story, tased him again in tyranny to need him excessively. When it comes to the separate claims on the state law claims, we believe it's important to note as well that there's an additional defendant that was not brought in the federal claims that is also on the state law claims. So I believe that's important. Who's the additional defendant? It's Winterberg, Deputy Winterberg. He's the individual that threw a spike strip through Mr. McManamy's window. So we believe that's important to note that he was not brought in the federal claims. We also believe, as this court noted earlier, it's discretionary. It's whether or not the court wants to take up those claims at this time, and we believe the case law is specifically clear on that. All in all, we believe that a jury question remains in this case on whether or not Mr. McManamy was tased after he was handcuffed, and whether or not tyranny need Mr. McManamy in the face excessively. We believe there's a jury question there with regards to the excessive force utilized. We would ask that this court reverse the district court and remand it with further proceedings. Thank you. Thank you, counsel, for the argument. Cases 18-3519, 18-3520, and 18-3554 are submitted for decision by the court. Please call and ask questions.